[Crim. No. 22650. Second Dist., Div. Five. Aug. 7, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
KENNETH CONWAY MAY, Defendant and Respondent.

## Counsel

Joseph P. Busch, District Attorney, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo and Herbert M. Barish, Deputy Public Defenders, for Defendant and Respondent.

## Opinion

**ASHBY, J.**—Defendant was charged in count I of an information with violating the Dangerous Weapons' Control Law (Pen. Code, § 12021) and in count II with possession of benzedrine (Health & Saf. Code, § 11910). His motion to suppress evidence (Pen. Code, § 1538.5) was granted and

the court ordered the information dismissed. (Pen. Code, § 1385.) This appeal by the People followed. (Pen. Code, § 1238, subd. (a)(7).)

The evidence adduced at the hearing on the motion to suppress was as follows: Officer Finn of the Torrance Police Department was on patrol at 11 a.m., March 1, 1972, when he observed defendant walking along an alley in a high crime rate area. Defendant had a bulge in his right rear pants pocket. The bulge was four or five inches long and fairly narrow. The top of the object making the bulge was silver. The officer had seen handguns with silver finishes on several occasions. He concluded that there was a possibility that the object in defendant's pocket was a handgun. Finn stopped his patrol car, approached defendant and asked him for identification. Defendant produced his social security card and another piece of identification from his wallet which was in his left rear pants pocket. Finn then asked defendant if he had any weapons in his possession. Defendant turned his back toward the officer and started to place his hands in the air. Officer Finn from his position immediately behind the defendant could then see as he looked down through the opening of the pocket that defendant was carrying a Derringer. The weapon was not protruding from the pocket, but the pocket was open about an inch and a half.

Finn removed the weapon from defendant's pocket. Defendant reached his right hand into his right jacket pocket and removed a clear plastic box containing white tablets. He opened the box and began swallowing the tablets. Finn pushed defendant against the police car. A number of the tablets were knocked to the ground. Finn recovered six and one-half of them.[1] The weapon which Finn recovered from defendant was loaded and operable.

In ruling on the motion to suppress, the trial court found that the officer had a right to approach defendant and inquire about the weapon, but that the officer was not in fear for his personal safety because he permitted defendant to obtain his identification from his rear pants pocket without first disarming him. The court further found that the weapon could not be considered a concealed weapon because the officer had been able to see that it was a gun while it was still in defendant's pocket.[2]

---

[1]They formed the basis for count II of the information.

[2]"THE COURT: I am not ruling on the basis that he didn't have a right to question the man, and he would have had a right to pat him down if the gun was not in plain sight. But the officer didn't have any fear, because he asked him initially for identification. And according to the officer's testimony, the man reached in his back—

 The conclusion of the trial court to the effect that, when the pocket opened giving a view of the gun it could not be said to be concealed is unsupportable. Under the holding of the trial court a defendant could immunize himself from prosecution on a charge of possessing a concealed weapon merely by intentionally or unintentionally permitting an occasional glimpse of the weapon which otherwise would remain concealed from sight.

In *People* v. *Koehn,* 25 Cal.App.3d 799 [102 Cal.Rptr. 102], an officer lawfully stopped defendant's car. Thereafter, he looked through the windshield and observed the handle of a pistol lying on the floorboard. The officer removed the pistol which turned out to be loaded. The court held that the officer had probable cause to arrest defendant for violating section 12025 of the Penal Code. By analogy the weapon carried in defendant's pocket was likewise a concealed weapon within the meaning of section 12025 of the Penal Code.

In *People* v. *Tarkington,* 273 Cal.App.2d 466 [78 Cal.Rptr. 149], a deputy sheriff during a routine bar check observed what appeared to be an outline of a handgun under appellant's shirt. The deputy felt the object which appeared to be a gun then removed it from the appellant's shirt. It was a loaded .32 pistol. In holding that the weapon was concealed, the court stated at page 469: "We note, also, that appellant's ineptness in accomplishing complete concealment of the weapon did not relieve him from commission of the crime in the presence of the officers. (See *People* v. *Linden,* 185 Cal.App.2d 752 [8 Cal.Rptr. 640]; *People* v. *McFarren,* 155 Cal.App.2d 383 [317 P.2d 998].)"

In the case before us the trial court purported to base its ruling partially on the absence of a showing by the People that Officer Finn was in fear of his safety. No such showing is required to establish a law enforcement officer's right of self-protection while carrying out his duties.

As the court in *People* v. *Tarkington, supra,* stated at page 469: "The totality of circumstances was such as reasonably to require that the officers in discharge of their duty to protect the public from violence question the appellant to determine the precise nature of the object that appeared to be a weapon and his purpose in carrying it. The officers in the interest

---

reached in the man's back pocket and took out a wallet and some identification, and an officer who is really concerned about his safety searches for weapons before he fools around and goes into a man's pocket to get out identification. It is not justified on any basis that I can see.

". . . . . . . . . . . . . . .

"THE COURT: My ruling is on the ground that there was no legal cause to reach into this man's pocket to remove the gun. It was in plain sight."

of their own protection were entitled to make a cursory search for weapons as a prelude to the questioning. The need to question and search a person who, in an urban area, is in apparent possession of a deadly weapon is so great as to justify the type of invasion of the rights of that person entailed by that need."

Officer Finn was alone on patrol in the city's highest crime rate area in a location where there are "numerous narcotics violations, strong-arm robberies, armed robberies, many knifings [and a] [h]igh burglary rate." The defendant was walking in an alley in the rear of an apartment complex. The fact that he asked appellant for identification first is not legally significant. We have no question whatever that Officer Finn was justified in his actions and that the evidence he obtained is admissible.

In view of our disposition of the concealment issue in this appeal, we need not consider appellant's other allegations of error.[3]

The order appealed from is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 3, 1973.

---

[3]The People also argue that a crime was committed in the presence of Officer Finn thus justifying a search even if the gun was not concealed because it was loaded and thus defendant was in violation of Penal Code section 12031, subdivision (a), which provides in pertinent part that: "[E]very person who carries a loaded firearm on his person . . . while in any public place . . . in an incorporated city . . . is guilty of a misdemeanor."