PEOPLE v CHARRON

Opinion of the Court

1. Weapons—Carrying Concealed Weapon—Concealment—Question of Fact.

The question of concealment is one for the jury in a prosecution for carrying of a concealed weapon, and the fact that the weapon is in plain view at one point does not negate, as a matter of law, a finding that the necessary concealment was there under any particular set of circumstances; thus, where the blade of a knife sticking from a defendant's pocket was visible to a police officer when the defendant was in the act of sitting down or standing up, there was a question of fact whether there was concealment within the meaning of the statute (MCLA 750.227).

2. Weapons—Criminal Law—Evidence—Res Gestae Evidence—Prejudice.

Testimony which was admitted as part of the res gestae showing that a defendant's companion at the time of arrest had a cut on his throat was not necessary or relevant to the prosecution on a charge of carrying a concealed weapon, and was prejudicial where the prosecutor, by his questioning and his closing argument, made it clear that he felt the defendant was guilty of inflicting the wound upon the companion (MCLA 750.227).

References for Points in Headnotes

[1, 2] 56 Am Jur, Weapons and Firearms § 9 *et seq.*

[3, 7] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[4] 21 Am Jur 2d, Criminal Law §§ 303, 324, 337, 584, 585.

Defendant's right to disclosure of presentence report. 40 ALR3d 681.

Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.

[5, 6] 29 Am Jur 2d, Evidence §§ 320, 321, 333.

Admissibility in criminal case of evidence relevant to the crime charged, as affected by incidental disclosure of another crime by defendant. 170 ALR 306.

[6] 29 Am Jur 2d, Evidence § 288.

3. APPEAL AND ERROR—PRESERVING QUESTION—PROSECUTORS—TRIAL
STRATEGY—CLOSING ARGUMENTS—INSTRUCTIONS TO JURY.

A question of the propriety of the prosecutor's trial strategy was
properly preserved for appellate review, even though there was
no objection at trial to the prosecutor's closing argument or to
the jury charge as given, where defense counsel had fully
argued before the trial judge that references to a companion's
cut throat in a trial for carrying a concealed weapon and an
exhibition of the scar to the jury was prejudicial as inferring an
additional crime, had objected to the prosecutor's trial strategy
throughout, and had secured the assurance of the trial court
that a cautionary instruction would be given to the jury but no
such instruction was given in fact.

4. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORTS.

A defendant has no right to demand that the judge proceed with
sentencing without the presentence report.

DISSENT BY V. J. BRENNAN, P. J.

5. CRIMINAL LAW—WEAPONS—PROSECUTORS—BURDEN OF PROOF—EVI-
DENCE—RES GESTAE—FACTS—SURROUNDING ARREST—OTHER
CRIMES.

*The prosecution in a criminal case has the burden of showing all
the facts surrounding an alleged crime; thus admission of
testimony which constituted a part of the res gestae of the
offense of carrying a concealed weapon was clearly proper
where that testimony served to show the facts which directed
the arresting officers' attention to the defendant and his com-
panion and which aroused the officers' suspicions and illumi-
nated for the jury the circumstances under which the officers
observed the concealed weapon on the defendant, and such
testimony was not rendered inadmissible simply because it
tended to suggest that defendant may have committed another
crime (MCLA 750.227).*

6. WEAPONS—CRIMINAL LAW—PROSECUTORS—EVIDENCE—OTHER
CRIMES—CORROBORATING TESTIMONY.

*Reversal of a defendant's conviction of carrying a concealed
weapon is not required because the prosecutor had the defend-
ant's companion exhibit a scar on his throat to the jury,
thereby allegedly implying that defendant was guilty of inflict-
ing the wound, where the fact that the companion had a cut on
his throat was already properly before the jury and no claim
was made that the scar was of such a nature as to inflame the*

*passions of the jurors; the exhibition merely served to corroborate the earlier testimony.*

7. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING QUESTION—PROSECUTORS—CLOSING ARGUMENTS—INSTRUCTIONS TO JURY.

*A defendant was not deprived of a fair trial because of improper closing arguments by the prosecutor or incomplete instructions to the jury by the judge where no objections were made at the trial to the arguments or to the instructions given and the error complained of could have been remedied had defendant objected to the arguments and the final charge.*

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 November 14, 1974, at Detroit. (Docket No. 16258.) Decided June 24, 1974.

Charles K. Charron was convicted of carrying a concealed weapon. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Allan C. Miller,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Defendant was found guilty by a jury of carrying a concealed weapon contrary to MCLA 750.227; MSA 28.424, was sentenced to two to five years in prison and appeals as of right.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The proofs adduced at trial showed that in the early morning hours of August 22, 1972 a plain-clothes police officer, while having a cup of coffee in an all-night restaurant, observed two men entering the establishment. The officer's attention was drawn to these men by reason of the fact that one of the men had what appeared to be a severe cut on his neck. As the men sat down the officer observed what appeared to be a knife protruding from the rear pocket of the pants of the uninjured man. The officer immediately went out to his automobile and radioed to the station and requested that uniformed officers be dispatched to that location. The officer waited outside the restaurant until the uniformed officers arrived. When the uniformed officers approached the pair and began to question the injured man about the wound, the uninjured man, defendant herein, became belligerent and started mouthing obsenities. Defendant was arrested as a disorderly person. As defendant arose from the table, one of the officers observed the knife blade sticking from defendant's rear pocket, whereupon defendant was immediately arrested on the charge of carrying a concealed weapon.

The defense asserted by defendant at trial, after an unsuccessful attempt to have the knife suppressed as the fruit of an illegal search, was that since the knife was sufficiently visible to come within the "plain view doctrine", it was not a concealed weapon within the meaning of the statute. At the close of proofs defendant moved for a directed verdict of acquittal on the ground that the people had failed to prove the necessary element of concealment. The trial court denied the motion on the basis that the question of concealment was one for the jury to determine under the particular circumstances.

On appeal defendant asserts that the trial court erred in denying the motion for a directed verdict. We find no merit in this assertion. As stated in *People v Jones,* 12 Mich App 293, 296; 162 NW2d 847, 849 (1968):

"The evident statutory purpose is reflected in the general rule applied in other jurisdictions that absolute invisibility is not indispensable to concealment of a weapon on or about the person of a defendant, and that a weapon is concealed when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life."

The touchstone is thus whether the weapon is discernible as such by the ordinary observations of those coming in contact with the person carrying the weapon. The fact that the weapon is in plain view at one point in time does not negate, as a matter of law, the finding that under any particular set of circumstances there was the necessary concealment. Even though the blade of the knife was visible to the officers when defendant was in the act of sitting down or standing up, there was a question of fact whether there was concealment within the meaning of the statute. See also, *People v Stirewalt,* 16 Mich App 343; 167 NW2d 779 (1969); *People v Iacopelli,* 30 Mich App 105; 186 NW2d 38 (1971).

While there was sufficient evidence upon which the jury could find guilt beyond a reasonable doubt, we are nevertheless compelled to reverse defendant's conviction and remand the matter for a new trial. Prior to the trial, defense counsel sought to have references to the fact that defendant's companion had a cut throat suppressed, since such references were not germane to the charge at hand and were highly inflammatory, particularly

in light of the absence of any evidence showing that defendant cut the companion's throat. The people argued that such testimony was admissible as part of the res gestae and under the "similar act statute".[1] The trial court, recognizing that such references would indeed be highly prejudicial, indicated that he would instruct the jury that there was no evidence linking the defendant to the cut throat. The court further held that since the charged crime was not a specific intent crime, the manner in which the injured party received the cut throat was not admissible under the statute, since the question of motive, scheme, plan or intent was not at issue. The court did, however, rule that the people could, as part of the res gestae, show that defendant's companion had a cut throat when he was in the restaurant.

Had the prosecutor limited his references to the cut throat to the fact that it was this condition that originally caused the plainclothes officer to notice the pair, we would be inclined to hold that such reference was properly admitted as part of the res gestae, although even that reference was hardly necessary to the proof of the charged crime; however, the prosecutor was not content with that. The prosecutor in questioning the plainclothes officer brought out, over defense counsel's objection, not only the fact that defendant's companion had a cut on the neck, but also that there was great quantities of blood on the injured party's shirt, that the cut was not what one would associate with a shaving nick but rather much larger and that the officer also observed blood on defendant's clothes. In questioning the arresting officers, the prosecutor asked if they had observed anything on the knife found in defendant's pocket

---

[1] MCLA 768.27; MSA 28.1050.

which would appear to be blood, to which was replied there were red spots on the knife. The prosecutor again took the opportunity to bring out the fact that there was a great quantity of blood emanating from the cut. The prosecutor called the injured companion and proceeded to inquire how his throat was. The prosecutor then had this person show the scar on his neck to the jury over a defense objection.

Not content by the prejudice engendered by these references, the prosecutor launched into a closing statement which could leave the jury with little doubt that the prosecutor felt that there was a much more far-reaching question than merely a concealed weapons charge. After demonstrating to the jury with his keys that an object would be concealed if sat upon, the prosecutor stated:

"But, if I stand up like this, these keys are there and the fellow over across the table, across from me who has his throat cut and the knife isn't concealed anymore; it is apparent.

"So, I guess I am saying before I get rid of my keys I guess what I'm saying is you know it is a matter of whether or not the knife is concealed, whether you intend it to be concealed. If you are carrying a gun, you can have it concealed and the gun butt can be sticking out.

"But, if your coat is wide open and the man can see it, it is not concealed anymore.

"So, what is your intention? All right, now I will give you the facts. I will also give you the fact that the fellow may be drunk and therefore not as good as he should be when he is sober in concealing things, but he might stick a fairly large knife in his pocket and be of the opinion that nobody is going to see it.

"You know what you, as an ordinary type citizen think about someone who carries a knife around that size and if you are carrying it around that size do you have any reason for carrying it around? When it is that

size, are you a cook? You are just off duty or something
like that, what do you want it for? Stick it in your
pocket so it is hard to see, part of it sticking out, what
have you got it for?

"You know, I ask you to think of the scene in this
restaurant. It is an all night Beanery where you have
got a booth, got a table, and got a guy sitting on one
side and you have got a guy sitting on the other side
and one of the fellows has got his throat cut. He didn't
die, but you saw the scar up there. What's that all
about? Is he a butcher coming home from his place of
business and got a knife in his pocket?

"Is he a hunter; is he a fisherman? What is the
situation? What should you as jurors do with a set of
facts? Is it criminal or is it not criminal? That's what is
before you.

"Not simply is it a single issue, I am sure you are
going to think hard about it. That's what the case is all
about."

Just as it is evident to this panel that the
prosecutor felt that defendant should be on trial
on some greater charge than carrying a concealed
weapon, it must be obvious to the jury that the
prosecutor felt that defendant was guilty of inflict-
ing the wound upon the injured companion. There
can be no question that despite the salutary pro-
nouncements of the trial court prior to trial, the
prosecutor was allowed to proceed in a manner
which is repugnant to the very concept of a fair
trial. Defendant was called upon to answer not
only to the charged crime, but also answer to
other charges which the prosecutor could not
bring.[2] As if to add insult to injury, the trial court
failed to give the promised instruction to the jury
with respect to the absence of any proof of any
other criminal activity on defendant's part.

[2] It appears that defendant was at one point also charged with
felonious assault but the charge was dismissed, apparently because
the supposed victim refused to testify against defendant.

Under these circumstances, the absence of an objection to the prosecutor's closing argument and to the jury charge as given will not restrain this Court from reviewing the impact of these actions upon the right of the defendant to secure a fair trial. Since defense counsel had fully argued the question of the possible prejudice before the trial judge, had objected to the prosecutor's trial strategy throughout, and had secured the assurance of the trial court that a cautionary instruction would be given to the jury, the question of the propriety of that trial strategy, including the prosecutor's closing argument and the failure to give the promised instruction, is properly preserved for appellate review. The interjection and continuing amplification by the prosecutor of the evidence relating to the cut throat, coupled with the prosecutor's implication that the question before the jury was something more than merely that of carrying a concealed weapon, denied defendant a fair trial with respect to the charged crime; accordingly, we reverse and remand for a new trial.

Although defendant's remaining allegations of error relate to matters which may not occur upon retrial, and thus will not be dealt with in this opinion, we would note that any problems relating to the giving of the standard instruction vis-a-vis the fact that defendant did not testify could be avoided by the trial court inquiring of the defendant, prior to giving the charge to the jury, what his wishes are with respect to such a charge. We would further note that even assuming *arguendo* that defendant has the *power to waive* the preparation of a presentence report before sentencing,[3]

[3] *See* the majority opinion in *People v Amos (On Rehearing),* 44 Mich App 484; 205 NW2d 274 (1973); *but see People v Amos,* 42 Mich App 629; 202 NW2d 486 (1972) and the dissent in *Amos (On Rehearing), supra.*

it would not appear that under any circumstances can it be said that the defendant has the right to demand that the judge proceed with sentencing without the presence report.

Reversed and remanded for a new trial.

T. M. BURNS, J., concurred.

V. J. BRENNAN, P. J. *(dissenting).* I respectfully disagree with the decision reached by my colleagues in this case. My examination of the record in the case at bar fails to disclose any error warranting or requiring reversal of this defendant's conviction.

Defendant was convicted by a jury in the Wayne County Circuit Court of carrying a concealed weapon contrary to the provisions of MCLA 750.227; MSA 28.424. The evidence presented below was, as my colleagues recognize, clearly sufficient to support this determination. Defendant contends, however, that his conviction should be reversed because the trial judge admitted certain testimony of the arresting officers as to the condition of his companion. Defendant asserts that the admission of this testimony constituted reversible error because it was highly prejudicial to his cause and had no probative value. I find myself unable to agree with this contention. In a criminal case the prosecution has the burden of showing all the facts surrounding an alleged crime. In other words the prosecution is required to present the entire res gestae at trial. *People v Kayne,* 268 Mich 186; 255 NW 758 (1934); 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 434, pp 527–528. Such a requirement is imposed on the prosecution to assure not only that a defendant receives a fair trial, but also to guarantee that the jury makes its determination on the true facts of a case. The trial

judge admitted the complained-of testimony on the
basis that it constituted a part of the res gestae of
the offense. This was clearly proper. The testimony
served to show the facts which directed the offi-
cers' attention to defendant and his companion
and which aroused the officers' suspicions. The
complained-of testimony illuminated for the jury
the circumstances under which the officers ob-
served the concealed weapon on defendant. This
testimony was not rendered inadmissible simply
because it tended to suggest that defendant may
have committed another crime. *People v Savage,*
225 Mich 84; 195 NW 669 (1923); *People v Sheehy,*
31 Mich App 628; 188 NW2d 231 (1971), *lv den,*
384 Mich 844 (1971); *People v Skidmore,* 28 Mich
App 677; 185 NW2d 137 (1970), *lv den,* 385 Mich
753 (1971). Nor was it rendered inadmissible be-
cause its prejudicial effect outweighed its probative
value. The only prejudicial effect I can discern
from this testimony is that it constituted evidence
damaging to defendant's position. This is clearly
not a sufficient basis to justify excluding legally
admissible evidence.

Similarly, the fact that the prosecutor had de-
fendant's companion exhibit the scar on his throat
to the jury does not require reversal of defendant's
conviction. The fact that defendant's companion
had a cut on his throat was already properly
before the jury. This exhibition, therefore, merely
served to corroborate the earlier testimony of the
officers. No claim is made that the scar was of
such a nature as to inflame the passions of the
jurors. Accordingly, I fail to see how reversible
error could here have been committed.

Defendant finally asserts that the prosecutor's
closing argument and the failure of the trial judge
to give an instruction to the jury served to deprive

him of a fair trial. Defendant did not, however, object to the prosecutor's closing argument nor to the final charge given the jury. The "promise" to give an instruction relied on by defendant in his claim of reversible error was made before jury selection and in terms somewhat less definite than defendant asserts. Defendant never reminded the Court of the need for such an instruction and never objected to the final charge. It is clear that had defendant done so the errors here complained of, including those alleged to have occurred during the prosecutor's closing argument, could have been remedied. I would not, therefore, reverse defendant's conviction on the basis of these alleged errors.

For all of the foregoing reasons I would affirm defendant's conviction.