523 So.2d 1270 (1988)
Ronald Earl COPE, Appellant,
v.
STATE of Florida, Appellee.
No. 87-798.
District Court of Appeal of Florida, Fifth District.
April 28, 1988.
Jackson O. Brownlee, P.A., Tavares, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC
COBB, Judge.
Appellant, Ronald Earl Cope, was stopped by two police officers in Leesburg, Florida, for a minor infraction (defective truck tail light). One of the arresting officers, Cutcher, shined his flashlight into the cab of the truck after Cope exited it, ostensibly to see if there were anyone else inside. Subsequently, the second officer, Appleby, shined his light into the cab, and, according to his testimony at hearing on the defendant's motion to dismiss, "I saw in plain view the butt of the weapon." Officer Appleby was subsequently asked:
Q Did you recognize the thing you saw as the butt of a handgun?
A Yes, sir, I did.
* * * * * *
Q Could you tell it was a black weapon?
A It appeared to be a blue steel. A weapon with the , it appeared to [have] wood grain handle grips.
Q And you had no problems recognizing it as a weapon whenever you shined your flashlight into the window?
A No, sir. Not from being familiar with weapons, what the butt of a gun looks like.
Thereafter, Officer Appleby took Officer Cutcher back to the vehicle and showed him the weapon. Officer Cutcher testified as follows:
Q Whenever you saw it, did you immediately recognize it to be a handgun?
A Yes, sir. From the shape of the butt I did.
* * * * * *
Q Let me ask you, could he [Officer Appleby] have seen enough to have told that it was a black weapon?
A Part of the frame was sticking up also, yes, sir.
Cope was arrested on a charge of carrying a concealed firearm, and the ensuing search disclosed a quantity of cocaine in his pocket. After a jury trial, Cope was found not guilty of the concealed firearm charge, but found guilty of possession of cocaine. The issue on appeal is whether there was sufficient probable cause to arrest on the firearm charge to allow for the subsequent search.
*1271 The trial court, in denying the motion to dismiss, primarily relied upon two Florida cases, each of which is clearly distinguishable. In Ensor v. State, 403 So.2d 349 (Fla. 1981), a police officer, peering through the windshield of a stopped Pinto automobile, "spotted a portion of a white object protruding from under the left side of the passenger floormat. From squatting and looking into the already-open passenger door, the officer determined the object to be a derringer pistol." Id. at 351. Upon casually looking into the car, he had been unable to identify the object as a firearm.
In discussing whether the evidence could sustain a jury finding that the derringer pistol under the passenger floormat could be a concealed firearm, the Florida Supreme Court concluded that such a weapon need not be "totally hidden from view" nor "absolutely invisible to other persons," but must be "hidden from the ordinary sight of another person." Id. at 353-54. The court said:
The term `ordinary sight of another person' means the casual and ordinary observation of another in the normal associations of life. Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible... . The critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm.
Id. at 354-55.
It should be noted that Ensor emphasized that the arresting officer, unlike a casual observer, was required to look through an open door from a squatting position and under the vehicle seat in order to identify the "white object" as a firearm. This is decidedly different from Officer Appleby's testimony in the instant case. In one glance through the truck window he immediately recognized a blue steel handgun with wood-grain handle grips on the front seat of Cope's truck. Officer Cutcher then also immediately recognized the black handgun from the frame sticking up.
The other case relied upon by the trial court below was State v. Sellers, 281 So.2d 397 (Fla. 2d DCA 1973). In that case, the defendant was carrying a pistol in his pocket with a quarter of an inch of the butt exposed, but apparently visible only upon close inspection by a police officer who was responding to a call that a drunk person was waving a gun around. Thus, the officer was specifically looking for a gun, and was able to detect the bulge of one in the defendant's pocket. The Second District held that these facts gave rise to a jury question on the issue of concealment. Such facts are quite different from the instant testimony of Officers Appleby and Cutcher.
More recently, in Mitchell v. State, 494 So.2d 498 (Fla. 2d DCA 1986), which is factually indistinguishable from the instant case, the Second District held, as a matter of law, that a firearm was not concealed where the arresting officer testified that he looked through an open car window and saw six inches of the butt of a gun sticking out from behind the front passenger seat, immediately recognizing it as a firearm (as did Officers Appleby and Cutcher in the instant case). The court noted that the officer recognized the firearm without changing position or bending down to look under the car seat, as was required by the officer in Ensor.
The Florida Supreme Court's most recent analysis of the concealment issue is in State v. Teague, 475 So.2d 213 (Fla. 1985). In that case, the supreme court said the term "concealed" must be construed in accordance with its usual and ordinary meaning, Id. at 214, and held that an uncovered rifle on the front seat of a car with tinted glass windows, which obscured view of the rifle from outside the car, is not a concealed firearm.
We hold that a pistol with the butt and part of the frame exposed on the front seat of a truck, instantly recognizable upon casual observation as a blue steel pistol with wood-grain handle grips, cannot be termed "concealed," given the ordinary meaning of *1272 that word. The jury below, in acquitting Cope of the firearm charge, apparently had no difficulty in determining that the firearm was not concealed. Based on the candid testimony of the arresting officers, that conclusion should have been as readily apparent to the trial judge at the pretrial hearing and at trial.
We also reject the state's contention that if any part of a firearm cannot be seen upon casual observation, the issue of concealment is automatically one for the jury. That would mean a pistol lying on its side could be found to be concealed because the viewer could not see the down side.
On the authority of Ensor and Mitchell, we reverse.[1]
REVERSED.
DAUKSCH, ORFINGER, COWART and DANIEL, JJ., concur.
SHARP, C.J., dissents with opinion.
SHARP, Chief Judge, dissenting.
In my view, Ensor v. State, 403 So.2d 349 (Fla. 1981) holds that the issue of whether or not a partially concealed weapon is a "concealed firearm" for purposes of section 790.001(2), Florida Statutes (1985), is properly one which should be resolved by the trier of fact. Here, the jury resolved this question in Cope's favor. The statute defines a "concealed firearm" as any firearm "which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person." § 790.001(2), Fla. Stat. (1985). Simply put, was there enough evidence to properly submit the case on the concealed weapon charge to the jury?
In this case the record established that on a June night in 1986, Cope's pickup truck was stopped by Officer Cutcher because the left taillight was out and the license tag was partially hidden by the rear bumper. Cutcher shined a light into the truck to make sure there were no passengers in the vehicle. He did not see a firearm.
Arriving a few minutes later, Officer Appleby also shined his flashlight into the bed and cab of the truck. He saw the butt of a firearm stuck down between the seats. Officer Cutcher returned to the cab and then saw the handle (the butt of the weapon) sticking up out of the crack between the seats. They saw the bottom part of the butt primarily and a small part of the frame. The rest of the weapon was hidden from view. However, both officers recognized it as a handgun.
In Ensor v. State, 403 So.2d 349 (Fla. 1981), the Florida Supreme Court held that although a firearm may be in "open view" for purposes of a lawful police search and seizure, it can also be "concealed" for purposes of section 790.001. In Ensor, the weapon was placed under the left side of the floormat on the passenger's side. Peering through the front window, the police officer could only see a part of a white object, but from a squatting position outside of the car, with the door open, the officer could see the object was a Derringer pistol.
The supreme court noted that the district court decisions on what constitutes a concealed firearm were conflicting and irreconcilable, and it cited none of them as supporting authority in the body of its opinion. Many of the district courts of appeal had evolved rules of law concerning what was or was not "concealed," much as the majority opinion seeks to do in this case.
Scraping the Florida case law, the court resorted to out-of-state decisions. It said:
The majority of those jurisdictions [with concealed weapon statutes similar to Florida's] have concluded that a weapon need not be totally hidden from view to constitute a "concealed weapon" for purposes of prosecution ... "[i]f the weapon is hidden from ordinary observation, it is concealed. Absolute invisibility to other persons is not indispensable to concealment." [Citation omitted].

*1273 "[A] weapon is `concealed' ... even though there is some notice of its presence to an alert police officer who can see part of the gun when he approached [sic] the vehicle." [Citation omitted].
Ensor, 403 So.2d at 353-354. As in this case, two alert police officers recognized the item in the truck as a firearm, but that is not determinative as to what an ordinary person would see or know.
In footnote 3, the Court cited with favor cases holding a concealed firearm charge had been established on facts similar to this case:

See Driggers v. State, 123 Ala. 46, 26 So. 512 (1899) (pistol partially in defendant's pocket and covered with hand); McKee v. State, 488 P.2d 1039 (Alaska 1971) ("mexican toothpick" knife partially in defendant's pocket; jury question as to concealment); People v. May, 33 Cal. App.3d 888, 109 Cal. Rptr. 396 (1973) (Derringer in defendant's rear pocket made bulge and had silver top slightly protruding); Marshall v. State, 129 Ga. App. 733, 200 S.E.2d 902 (1973) (handle of pistol tucked in defendant's pants but visible to some extent through split in defendant's shirt); State v. McNary, 100 Idaho 244, 596 P.2d 417 (1979); People v. Euctice, 371 Ill. 159, 20 N.E.2d 83 (1939) (pistol on rear floorboard of defendant's vehicle); People v. Williams, 39 Ill. App.3d 129, 350 N.E.2d 81 (1976) (same); Prince v. Commonwealth, 277 S.W.2d 470 (Ky. 1955) (automatic handgun in pocket with butt sticking out); Shipley v. State, 243 Md. 262, 220 A.2d 585 (1966) (dirk protruding from under driver's seat of defendant's automobile); People v. Charron, 54 Mich. App. 26, 220 N.W.2d 216 (1974) (knife slightly protruding from defendant's rear pocket); People v. Jones, 12 Mich. App. 293, 162 N.W.2d 847 (1968) (butt of gun "poking" out of defendant's pocket and completely hidden from view when defendant seated in automobile); State v. Bordeaux, 337 S.W.2d 47 (Mo. 1960); Kennedy v. State, 171 Neb. 160, 105 N.W.2d 710 (1960); State v. Rabatin, 25 N.J. Super. 24, 95 A.2d 431 (1953); State v. Pettit, 20 Ohio App.2d 170, 252 N.E.2d 325 (1969) (knife with six-inch blade in sheath under passenger seat of defendant's automobile nevertheless concealed); Mularkey v. State, 201 Wis. 429, 230 N.W. 76 (1930) (.32 Colt automatic revolver on shelf behind driver's seat of defendant's automobile).
Ensor, 403 So.2d at 354.
The Ensor court concluded:
The critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm. The ultimate decision must rest upon the trier of fact under the circumstances of each case. (Emphasis supplied).
Ensor, 403 So.2d at 355.
We are bound by Ensor in this case. The facts here are close to those described in the out-of-state cases as legally sufficient to support a concealed weapon conviction. Ensor held that the jury is the proper body to make the decision as to whether a weapon is concealed when it is only partially hidden. I therefore would affirm this case.
NOTES
[1] We have considered this matter en banc pursuant to Florida Rule of Appellate Procedure 9.331(a).