## STATE OF FLORIDA v RUIS
### Case No. 88-9898
Eleventh Judicial Circuit, Dade County

February 8, 1989

### APPEARANCES OF COUNSEL

**Marsha Warrin,** Assistant State Attorney, for plaintiff.
**Yale Galanter,** for defendant.

### OPINION OF THE COURT

JEFFREY ROSINEK, Acting Circuit Judge.

*ORDER ON DEFENDANT'S MOTION TO DISMISS*

THIS CAUSE HAVING come on before this Court on February 7, 1989, and this Court having heard argument of counsel and reviewed the evidence, it is

ORDERED AND ADJUDGED AS FOLLOWS:

*Facts*

1. On March 25, 1988, in the municipality of Virginia Gardens, Dade County, at approximately 2:18 A.M., Officer Frank Gil was

driving past the Airline Amoco Gas Station when he observed the defendant outside his car talking to the gas station attendant.

2. The defendant's car was parked at an angle with engine running and door opened.

3. The officer pulled into the station and overheard the conversation between the defendant and attendant.

4. Officer Gil called the defendant over to ask defendant what was needed.

5. Defendant said he was looking for a particular street. Officer Gil asked the defendant for the address that he was looking for. The defendant, according to Gil, "Kept on uttering all kind of weird names." (D. p 10, l. 5)

6. Gil noticed that the car's engine was still running and the defendant was "jittery and nervous, and he is perspiring." (D. p 11, l. 3)

7. Gil asked for defendant's license and registration. Defendant gave the license but said he had the registration in the car.

8. Defendant then said he had to go to the bathroom. Gil pointed the way, "But", according to Gil, "he never made it that way, because he jumped into his car, he floored his gas pedal and he took off, which made me suspicious and made me go after him." (D p 12, l. 21)

9. Gil called to defendant to stop and he does shortly after Gil put on emergency equipment. Defendant stops, gets out of his car and says he has to go to the bathroom.

10. Officer Galvez, who came on the scene accompanies the defendant to the bathroom after the defendant answered that he had "no guns or drugs in the car." (D p 18, l. 21)

11. When the defendant returns from the bathroom, he approaches his locked car where Officer Gil states he got approval from the defendant to search the car.

12. Gil said he "saw something, a metallic object, (and) I couldn't tell what it was." (D p 22, l. 3) Then he looked into the vehicle. "It was very dark in the area, there was something over it, I couldn't tell at that point what it was," stated Gil.

13. Gil stated, "I believe there was something there, but I couldn't tell what it was." (D p 22, l 12) "I just saw something protruding from outside of a jacket," located "on top of the seat, right front passenger, in a Z28 Camaro."

14. The defendant unlocked the car door, was escorted to the back

111

of the car by Officer Galvez. Then Gil "lifted up the jacket" and saw a "223 caliber assault rifle, loaded, 30 rounds in the magazine and read to fire, safety off." (D p 23, 1 22)

15. Gil repeated that "I didn't know it was a gun," "I saw an object protruding — I didn't know what it was."

16. Defendant was placed under arrest for CCF. Then Officer Gil further searched the car and found a derringer and a knife in a duffle bag. Additionally, Gil found a variety of ammunition.

17. Gil ran a check of the weapons "they all came back with the call ZRU, which is OK," according to Gil. (D p 29, 1 21)

18. Defendant was transported to jail.

*Findings as to Law*

The Court, in *Mitchell v State,* 4949 So.2d 498 (Fla. 2d DCA 1986), stated, "*as a matter of law,* that a firearm was not concealed where the arresting Officer testified that he looked through an open car window and saw inches of the butt of a gun sticking out from behind the passenger seat, immediately recognizing it as a firearm." *Cope v State,* 523 So.2d 1270 (Fla. 5th DCA 1988), at p. 1271.

Both *Mitchell* and *Cope* enhanced that which was decided by the Florida Supreme Court in *Ensor v State,* (403 So.2d 349 (Fla. 1981)), where the Court staged, at p 353, "The majority of (those) jurisdictions have concluded that a weapon need not be totally hidden from view to constitute a 'concealed weapon' for the purpose of prosecution under the respective states." The Court further staged, on p 354, " . . . absolute invisibility is not a necessary element to a finding of concealment under section 790.001 . . . for a firearm to be concealed, it must be (1) on or about the person and (2) hidden from the ordinary sight of another person. The term 'on or about the person' means physically on the person or readily accessible to him. This generally includes the interior of an automobile and the vehicle's glove compartment, where or not locked. The term 'ordinary sight of another person' means the casual and ordinary observation of another in the normal associations of life. Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible."

The question for this Court is whether the police officer, Frank Gil, should have objectively believed that the item seen by him in the defendant's car was, in fact, a firearm or whether the firearm could be considered to be concealed from the ordinary sight of another person based on the facts presented through deposition of Officer Gil?

112

The facts in *Ensor* are different than in the case at bar. There, the officer had to change position and bend down to look under the car seat to find the "Concealed Weapon."

In *Mitchell,* the officer "recognized the butt of the carbine as being a part of a firearm without changing his position or bending down to look under the car seat to find it." p 500

Here, Officer Gil testified at deposition, p 22, 1 3, "I saw something, a metallic object, I couldn't tell what it was, okay. It was very dark in the area, there was something over it. I couldn't tell at that point what it was, okay." Officer Gil observed a metallic object protruding from outside of a jacket. It is his uncontested testimony that the object was hidden from his view and only when he "lifted the jacket" did he realize that the object was a rifle, loaded, 30 rounds in the magazine, and ready to fire, safety off, etc." (p 23, 1 11)

Based upon the above factual situation, in light of *Ensor, Mitchell* and *Cope,* it is

ORDERED AND ADJUDGED

That Defendant's Motion to Dismiss is denied and the Court finds that indeed the weapon in question was concealed within the scope of Fla. Statute 790.001.

DONE AND ORDERED in Chambers, this 8th day of February, 1989, in Miami, Dade County, Florida.