# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONNIE ANTHONY THOMAS-DAWSON,

        Defendant-Appellant.

UNPUBLISHED
August 3, 2017

No. 332339
Wayne Circuit Court
LC No. 15-001533-01-FC

Before: SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Following a bench trial, the circuit court convicted defendant of armed robbery, MCL 750.529, assault with intent to do great bodily harm, MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant challenges the sufficiency of the evidence supporting his CCW conviction, defense counsel's failure to insist on a speedy trial, the propriety of the eyewitnesses' identification, the imposition of consecutive sentences for felony-firearm and unrelated sentences, and the assessment of various costs and fees at sentencing. We affirm defendant's convictions, but remand for further sentencing proceedings.

## I. FACTUAL BACKGROUND

In the early morning hours of January 27, 2015, defendant and Joseph Brown drove to a Detroit gas station in a black, two-door Monte Carlo with plastic covering the rear passenger-side window. The men went into the gas station convenience store to purchase cigars. Gordon Johnson, who did odd jobs and served as security at the gas station, was standing near the doorway. On the way out, defendant pulled out a pistol and jabbed it in Johnson's side. Defendant forced Johnson to walk toward defendant's vehicle. Defendant then hit Johnson several times in the face with the pistol, breaking several of Johnson's teeth, and Brown punched him. Defendant and Brown took $30 and some marijuana from Johnson and stole his "True Religion" jacket. When Brown turned his back, Johnson seized the opportunity. He punched defendant in the face and ran away. As Johnson ran, defendant fired the pistol toward him. None of the bullets hit their target. Johnson and gas station attendant, Mohammed Bin Rabed, later described defendant as tall, with "puffed up hair," and wearing a yellow turtleneck shirt.

Approximately 10 minutes later, Breaun Glasper noticed defendant and Brown in a liquor store parking lot. She described their vehicle as a black Monte Carlo with plastic over the rear

-1-

passenger window. As Glasper left the liquor store, defendant and Brown began to walk toward her. Brown carried a pistol in his hand. Glasper escaped before the men could reach her.

The police tracked down defendant and Brown approximately one hour later. The men were still traveling in a black Monte Carlo with the rear passenger window covered in plastic. Defendant was still wearing a yellow shirt. The arresting officers did not find a pistol or the stolen money or jacket. The following day, Johnson and Glasper both identified defendant at a corporeal lineup.[1]

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence supporting his CCW conviction. Specifically, defendant contends that the prosecutor cannot prove he concealed the pistol as Johnson saw the weapon. We review de novo a defendant's challenge to the sufficiency of evidence, viewing the evidence in the light most favorable to the prosecution to determine if the prosecutor established the elements of the offense beyond a reasonable doubt. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014).

MCL 750.277 proscribes the offense of CCW, in relevant part, as follows:

(2) A person shall not carry a pistol concealed on or about his or her person, . . . except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

This Court has consistently held that concealment within the CCW statute does not require complete invisibility. In *People v Jones*, 12 Mich App 293, 296-297; 162 NW2d 847 (1968), a police officer placing the defendant under arrest noticed what appeared to be the butt of a pistol poking out of the defendant's pocket. On appeal, the defendant challenged his CCW conviction because part of the pistol was visible and therefore not "concealed." This Court concluded:

"The purpose of *all* concealment statutes is clear. At the time they were enacted, the open carrying of weapons upon the person[] was not prohibited. The purpose of the concealed weapons statutes was to prevent men in sudden quarrel[s] or in the commission of crime from drawing concealed weapons and using them without prior notice to their victims that they were armed. The person assailed or attacked would behave one way if he knew his assailant was armed and perhaps another way if he could safely presume that he was unarmed." *People v Raso*, 9 Misc 2d 739; 170 NYS2d 245, 251 (1958).

---

[1] Brown was originally designated as a codefendant in this case, but was ultimately deemed incompetent to stand trial.

The evident statutory purpose is reflected in the general rule applied in other jurisdictions that absolute invisibility is not indispensable to concealment of a weapon on or about the person of a defendant, and that a weapon is concealed when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life.

\* \* \*

The issue of concealment depends upon the particular circumstances present in each case and whether the weapon was concealed from ordinary observation is a question for the trier of fact to determine. . . . [*Id*. at 295-297 (citations omitted; emphasis in original).]

Based on the reasoning in *Jones*, this Court has repeatedly held that a defendant may be convicted for CCW if he or she conceals the weapon during even part of the offense. *People v Espinosa*, 142 Mich App 99, 102; 369 NW2d 265 (1985) (where the defendant had the gun concealed on his person during a fistfight, it fell to the ground and the defendant's sister-in-law carried it away, and the defendant followed her, returned with the gun and shot the victim); *People v Charron*, 54 Mich App 26, 30; 220 NW2d 216 (1974) ("The fact that the weapon is in plain view at one point in time does not negate, as a matter of law, the finding that under any particular set of circumstances there was the necessary concealment."); *People v Iacopelli*, 30 Mich App 105, 106-107; 186 NW2d 38 (1970) (where the defendant concealed the weapon only after the arresting officers saw him brandishing the gun). The point of the CCW statute is to prevent surprising a victim with a weapon. *People v Nimeth*, 236 Mich App 616, 621; 601 NW2d 393 (1999) (quotation marks and citation omitted) ("[T]he general purpose behind the concealed weapon statute is to prevent the possibility that quarrelling persons would suddenly draw a hidden weapon without notice to other persons."). Where a defendant brings a concealed weapon into a situation and then suddenly brandishes the weapon to accomplish his or her illegal goals, the defendant has used the concealed weapon to his or her advantage.

Here, Johnson and Bin Rabed testified that they did not see defendant's pistol when he walked into the gas station convenience store. Only when defendant jabbed the pistol into Johnson's side to force him out of the store did anyone notice the weapon. The jury credited this testimony, finding that defendant had concealed his weapon. We may not interfere with that assessment. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

III. FELONY-FIREARM SENTENCE

At sentencing, the trial court ruled that defendant's felony-firearm sentence would run consecutive to all of his other sentences. Defendant argues, and the prosecutor agrees, that the felony-firearm sentence should be consecutive only to the armed robbery sentence. Specifically, the felony-firearm statute precludes CCW as a predicate felony and the prosecutor did not list defendant's assault charge as a predicate felony in the information. As such, we remand to the trial court to amend the judgment of sentence to reflect that defendant's felony-firearm sentence is consecutive to the armed robbery sentence alone. See *People v Taybron*, 486 Mich 899; 780 NW2d 795 (2010); *People v Clark*, 463 Mich 459, 465; 619 NW2d 538 (2000).

## IV. COURT COSTS

Defendant challenges the trial court's imposition of $600 in court costs under MCL 769.1k(1)(b)(*iii*), as the court did not establish a factual basis on the record to support the assessment. The prosecutor agrees that remand is necessary pursuant to *People v Konopka (On Remand)*, 309 Mich App 345, 359-360; 869 NW2d 651 (2015), to "establish a factual basis" supporting that "the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)." Accordingly, in addition to correcting the judgment of sentence as outlined above, the trial court must conduct a hearing to state on the record its factual basis for assessing $600 in costs.

## V. ATTORNEY FEES

Defendant also challenges the trial court's assessment of $400 in attorney fees without first determining whether he was indigent and unable to pay the fees. Our review is limited to plain error as defendant did not preserve his challenge below. *Konopka*, 309 Mich App at 356.

A trial court is permitted to impose attorney fees against a defendant at the time of sentencing. MCL 769.1k(1)(b)(*iv*). The *imposition* of these fees "is not limited by reference to a defendant's ability to pay," and a defendant is not entitled to an "ability-to-pay" analysis at *sentencing*. *People v Jackson*, 483 Mich 271, 283, 291; 769 NW2d 630 (2009). Rather, defendant is entitled to consideration when the Department of Corrections attempts to *enforce* the court order. Before withdrawing funds from the defendant's prison account as permitted by MCL 769.1*l* to cover attorney fees, the department must notify the defendant and give him or her "an opportunity to contest the enforcement on the basis of his [or her] indigency." *Jackson*, 483 Mich at 292. Only then should the court "evaluate the defendant's ability to pay." *Id*. at 293.

The trial court therefore did not err in assessing attorney fees against defendant at sentencing. Defendant will be entitled to challenge the award upon enforcement by the Department of Corrections, but no relief is warranted at this time.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In an in pro per brief filed pursuant to Administrative Order No. 2004-6, Standard 4, defendant contends that his appointed trial counsel was constitutionally ineffective for failing to pursue his right to a speedy trial. Our review is limited to plain error apparent on the existing record as defendant did not move for a new trial or *Ginther*[2] hearing in the lower court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014); *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To warrant relief, defendant must overcome the heavy burden of establishing that counsel's performance was constitutionally deficient and affected the outcome of his trial. *Lopez*, 305 Mich App at 693-694.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"[A] defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013), citing US Const, Am VI; Const 1963, art 1, § 20. "[T]he federal and state constitutions and Michigan statutory law guarantee criminal defendants a speedy trial without reference to a fixed number of days." *Rivera*, 301 Mich App at 193 (quotation marks and citation omitted). Pursuant to MCL 768.1:

> The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial.

Four factors must be considered in determining whether a defendant's right to a speedy trial has been violated: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006) (citation omitted). "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *Rivera*, 301 Mich App at 193. "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Id*. The clock "runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261.

Defendant has not established a violation of his right to a speedy trial. Defendant was arrested on January 27, 2015, and the first day of trial was February 16, 2016. Defendant is not entitled to a presumption of prejudice because the pretrial period was only 12½ months.

The delay was due, in part, to defendant's own actions. On September 21, 2015, defendant's first appointed attorney withdrew because defendant "filed a grievance" against him. Once defendant received new appointed counsel, there was further delay while the parties attempted to negotiate a plea deal. Additionally, replacement counsel was not available on the originally scheduled trial date of December 7, 2015, requiring delay until February 2016. Part of the delay was not caused by defendant, but by his codefendant Brown. Specifically, the court required time to determine whether Brown was competent to stand trial. Once Brown was deemed incompetent, the court severed defendant's trial. However, this delay was not the fault of either the court or the prosecutor and cannot be counted against the state.

Moreover, defendant makes no claim that he was prejudiced by the delay. And counsel *did* raise an objection on this ground. At a hearing on November 10, 2015, defense counsel raised defendant's concern that there was a violation of the 180-day rule requiring dismissal of his case. The trial court denied defendant's claim on the merits. Any further objection would

have been futile and counsel could not be found ineffective for failing to pursue it. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[3]

## VII. IDENTIFICATION EVIDENCE

Defendant also contends in his in pro brief that the eyewitness identifications were tainted and should have been excluded from evidence. In this regard, defendant asserts that he was the only individual in the lineup with tattoos, setting him apart from everyone else. Defendant claims that this difference was prejudicial because the eyewitnesses selected him despite that neither mentioned seeing tattoos on the suspect. Defendant failed to preserve this issue by objecting in the lower court. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).[4] While our review would generally be for clear error, *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993), defendant's failure to object limits us to plain-error review, *McCray*, 245 Mich at 638.

To merit relief, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *Id*. at 303. "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). Any physical differences between the defendant and other participants in the identification procedure will go to the weight of the evidence, as opposed to its admissibility. *Id*. Factors to consider when determining the likelihood of misidentification include:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Kurylczyk*, 443 Mich at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

---

[3] In the statement of questions presented, defendant also contends that counsel was ineffective for failing to investigate and produce alibi witnesses. He abandons this issue by failing to make any argument in this regard in his appellate brief. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant similarly abandoned any challenge to counsel's waiver of defendant's right to a jury trial by merely citing relevant caselaw and establishing no factual predicate for the claim.

[4] At trial, defense counsel attacked the credibility of the eyewitness identifications by eliciting testimony that defendant was still wearing the yellow shirt he was arrested in and was the only person in the lineup wearing that color.

The two eyewitnesses were able to closely observe defendant on the night in question as each had close encounters with him. Defendant stood close to Johnson as he forced Johnson at gunpoint to leave the gas station convenience store. Defendant then hit Johnson several times with his gun, again standing in close proximity to the victim. Evidence established that the outside area where defendant assaulted Johnson was well lit. Under these conditions, Johnson was able to focus carefully and almost exclusively on defendant. Glasper was also able to closely observe defendant as he and Brown walked directly toward her.

The witnesses described defendant as a tall African-American man with "puffed up" hair, wearing a yellow shirt and riding in a black Monte Carlo with a plastic covered window. Defendant was located by police within an hour of Johnson's attack, wearing a yellow shirt and riding in a black Monte Carlo with a plastic covered window. He is tall and had "puffed up" hair at that time. The witnesses' descriptions appear accurate as they are complete strangers and yet they described the same assailant. While Johnson testified that defendant's yellow shirt was striking during the lineup, Johnson insisted that he recognized defendant's face. Further, there is no record indication that defendant's tattoos swayed either witness's identification.

Moreover, both eyewitnesses were certain regarding their identification. And the lineup occurred less than 24 hours after Johnson's assault. Overall, defendant has not established that the lineup procedure was so prejudicial as to warrant relief.

We affirm defendant's convictions. We remand for correction of the judgment of sentence and to allow the trial court an opportunity to explain its imposition of court costs. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien

-7-