747 So.2d 368 (1999)
James DORELUS, Petitioner,
v.
STATE of Florida, Respondent.
No. 94,174.
Supreme Court of Florida.
September 30, 1999.
Rehearing Denied January 12, 2000.
*369 Richard L. Jorandby, Public Defender, and Gary Caldwell, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Michael J. Neimand, Bureau Chief Assistant Attorney General, and Lara J. Edelstein, Assistant Attorney General, Fort Lauderdale, Florida, for Respondent.
PARIENTE, J.
We have for review State v. Dorelus, 720 So.2d 543 (Fla. 4th DCA 1998), which expressly and directly conflicts with Carpenter v. State, 593 So.2d 606 (Fla. 5th DCA 1992), and Taylor v. State, 552 So.2d 1135 (Fla. 5th DCA 1989).[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
Dorelus and his codefendant Presume were stopped for a minor traffic infraction. *370 "While standing outside the vehicle," the arresting officer "observed the shiny silver butt of a handgun sticking out of the console located underneath the radio."[2] Both Dorelus and Presume were arrested and charged with carrying a concealed firearm. Dorelus and Presume filed sworn motions to dismiss the informations against them. Presume's motion was granted first. In his motion, Dorelus requested that the trial court take notice of the order previously granting Presume's motion on the concealed weapon charge based on the same facts.
The State did not file a traverse to Dorelus's motion to dismiss, but instead relied on the arguments it made in Presume's case. The State admitted that it had not filed a traverse because there were "no material facts in dispute." The trial court granted Dorelus's motion to dismiss.
Relying on Ensor v. State, 403 So.2d 349, 354-55 (Fla.1981), the Fourth District reversed the trial court, holding that "[w]hether a partially visible firearm is `concealed' is an issue of fact for the jury." Dorelus, 720 So.2d at 544.[3] Dorelus argues that the Fourth District improperly relied on Ensor in reaching this conclusion.
The statute at issue in this case, section 790.01(2), Florida Statutes (1995), provides: "Whosoever shall carry a concealed firearm on or about his person shall be guilty of a felony of the third degree...."[4] Section 790.001(2), Florida Statutes (1995), defines "concealed firearm" as any firearm "carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person." This statute does not apply to those who have licenses to carry concealed firearms or weapons. See § 790.06, Fla. Stat. (1995).
Although the statutes at issue in this case pertain exclusively to firearms, a similar subsection of the statute applies to other kinds of weapons. See § 790.01(1).[5] As with concealed firearms, a "concealed weapon" is defined as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person." § 790.001(3)(a) (emphasis supplied).
The concealed weapon statute is inapplicable if the firearm or other weapon carried in a private motor vehicle is "securely encased or is otherwise not readily accessible for immediate use." § 790.25(5), Fla. Stat. (1995). Thus, in this state, individuals are prohibited from carrying concealed firearms without a license in their private motor vehicles, unless the firearm is securely encased or otherwise inaccessible. As was stated over a century ago, the prohibition against carrying concealed weapons is designed to prevent a person with a weapon from "taking some undue advantage over an unsuspecting adversary," who is not aware that the person is carrying a weapon. Sutton v. State, 12 Fla. 135, 136 (1867).
Ensor is the seminal case setting forth the circumstances under which a weapon is "concealed" with the meaning of section 790.001. In Ensor, this Court held that for a weapon to be concealed within the meaning of the statute it need not be *371 absolutely invisible. 403 So.2d at 354. The Ensor Court also held that the statutory phrase "ordinary sight of another person," as used in section 790.001(2),[6] means "the casual and ordinary observation of another in the normal associations of life." Id. at 354. We explained that
[t]he critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm. The ultimate decision must rest upon the trier of fact under the circumstances of each case.
Id. at 355. Unfortunately, this broad statement suggests that the trier of fact must always answer the question of whether a weapon is "concealed."
However, just as we rejected the conclusion in Ensor that absolute invisibility is a required element of concealment, we also reject the proposition that simply because a portion of a weapon cannot be seen upon casual observation the issue is automatically for the jury. See Cope v. State, 523 So.2d 1270, 1272 (Fla. 5th DCA 1988). To the extent that Ensor can be read to stand for the proposition that the issue of whether a weapon is concealed within the meaning of the statute is always for the trier of fact to resolve, we clarify that the issue of concealment is ordinarily an issue for the trier of fact.
We also recognize that by focusing on the viewpoint of the observer in Ensor to answer the question of concealment, we may have inadvertently led the judicial inquiry away from considering the manner in which the weapon is carried. The statutes at issue explicitly define "concealed firearm" and "concealed weapon" by focusing on the "manner" in which the weapon is carried on or about the person. See § 790.001(2)-(3)(a). Our decision in State v. Teague, 475 So.2d 213, 214 (Fla.1985), recognized this focus by making clear that the crux of concealment is the location of the weapon in the vehicle.
In Teague, after the defendant opened his car door, the arresting officer observed the muzzle portion of a rifle lying uncovered on the front seat of the defendant's vehicle after the defendant opened his car door. The State alleged that statute had been violated because the weapon was concealed from the ordinary sight of another person by the vehicle's tinted windows. Id. at 214. We rejected that contention and determined that due to the fact that the rifle had not been concealed within the vehicle, the automobile's tinted windows obscuring the weapon and the driver did not result in a violation of the concealed weapons law.[7]See id.
While the statute does not allow for hard-and-fast rules, variables that can be taken into consideration by the trial court in evaluating whether the weapon has been carried in such a manner as to be hidden from ordinary sight include the location of the weapon within the vehicle, such as the floorboard, the seat, a seat pocket, or an open console. The court should also consider whether, and to what extent, the weapon was covered by another object, such as a sheet or towel. In addition, although the specific intent of the defendant to conceal the weapon is not an element of the crime, the court may consider testimony that the defendant utilized his body in such a way as to conceal a weapon that would otherwise have been detectable by ordinary observation. See *372 State v. Hankerson, 430 So.2d 517, 518 (Fla. 2d DCA 1983) (concealment was a question of fact where the defendant was "leaning over" the weapon located between the seats of his car, "with one arm draped over the butt of the weapon" to prevent the officer from observing it).
The court may also consider the nature and type of weapon involved because logic dictates that it is easier to conceal a handgun from "ordinary sight" than it is to conceal a rifle, and that weapons such as the large knife in Gibson v. State, 576 So.2d 899 (Fla. 2d DCA 1991), or the large hunting knife in State v. Hardy, 610 So.2d 38 (Fla. 5th DCA 1992), are by their very nature more easily observable than smaller weapons. In considering these and other variables, in all instances common sense should prevail. See Ensor, 403 So.2d at 354-55. The focus should remain on whether the weapon was carried in such a manner as to conceal it from ordinary sight.
In addition, although the observations of the police officer will not necessarily be dispositive, a statement by the observing officer that he or she was able to "immediately recognize" the questioned object as a weapon may conclusively demonstrate that the weapon was not concealed as a matter of law because it was not hidden from ordinary observation. See, e.g., Hardy, 610 So.2d at 38; Cope v. State, 523 So.2d at 1270. On the other hand, the mere fact that an officer does not immediately observe the firearm does not mean that the question of concealment is automatically for the jury. For example, as Judge Sharp explained in Carpenter:
The record established without dispute or conflict that when Carpenter was stopped by a police officer for a possible DUI charge, there was a handgun in the front seat beside her. The grip and hammer were sticking up six inches above the level of the seat, and the police officer immediately recognized it as a handgun.

The quirk of facts in this case was that the police officer did not initially see the gun when he first stopped the car. It was approximately 11:45 p.m., and there were no street lights near the place Carpenter parked the car. Carpenter is 5'5" tall and weighs 190 pounds. Her body may have obscured the officer's view of the gun and there was also unrebutted testimony that he did not look into the car interior until later.
Carpenter, 593 So.2d at 607 (emphasis supplied).
Despite the "quirk of facts" in Carpenter, the Fifth District held that the motion to dismiss the concealed weapons charge should have been granted. See id. As Carpenter exemplifies, the focus must remain on the manner in which the weapon is carried. See id. For this reason, we disapprove of the First District's reasoning in McGraw v. State, 404 So.2d 817 (Fla. 1st DCA 1981), where the district court affirmed the trial court's denial of the motion to dismiss based in part on the fact that, although one officer looking into the passenger's window could immediately recognize the object in the defendant's vehicle as a pistol, the other officer did not initially observe the weapon from the driver's side of the vehicle. Whether a crime has occurred should not depend on whether the officer's initial vantage point is the driver's rather than passenger's side of the automobile.
Further, although the Court in Ensor stated that the ordinary observations of a citizen may not be the same as the observations of a police officer, that statement must be read in context. In Ensor, the arresting officer was able to readily observe only a "portion of a white object protruding from the left side of the passenger floormat" and was able to conclude that the object was a derringer pistol only by squatting and looking "through the open vehicle door and under the vehicle seat." 403 So.2d at 351, 355. It was in *373 that context that we stated that the "[o]rdinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible." Id. at 354. This statement in Ensor does not mean, as the State suggests, that a trial court, in evaluating the manner in which the weapon was carried, should discount the uncontroverted observations of a police officer that he or she recognized the object as a weapon.
We thus reject the State's contention that whether the weapon is hidden from "ordinary sight" should always be left to the trier of fact to view through the lens of the "ordinary citizen." In most cases, where a defendant is charged with carrying a concealed weapon in a motor vehicle, the discovery is made by the officer who has stopped the vehicle. Therefore, it is appropriate to ascertain what the officer has reported he or she observed. See, e.g., Carpenter, 593 So.2d at 607; Hardy, 610 So.2d at 41; State v. Quinn, 518 So.2d 474, 474 (Fla. 4th DCA 1988). However, "magic words" from the arresting officer that he or she "immediately recognized" the object as a firearm are not the only method to resolve the issue of concealment as a matter of law. To the extent that Dorelus suggests the contrary, we disagree.
We further reject the State's position that the trial court should take into consideration variables not relevant to the manner in which the firearm was carried, including whether the window was open or closed and the time of day the weapon was observed. If variables such as the time of day were proper considerations, then whether a crime was committed would depend upon the hour of observation. For example, what might not be a crime at 9 a.m. could become a crime at 9 p.m. If we were to inject such variables into the definition of concealment, we would run the additional risk of making this statute void for vagueness.
Applying these considerations to this case, we first recognize that a motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4) is analogous to a motion for summary judgment. See State v. Jones, 642 So.2d 804, 805 n. 2 (Fla. 5th DCA 1994); State v. Diaz, 627 So.2d 1314, 1315 (Fla. 2d DCA 1993). In bringing a rule 3.190(c)(4) motion to dismiss, the defendant must "demonstrate that the undisputed facts fail to establish a prima facie case." State v. Pollock, 600 So.2d 1313, 1314 (Fla. 3d DCA 1992) (quoting Ellis v. State, 346 So.2d 1044, 1045 (Fla. 1st DCA 1977)).
Dorelus's sworn motion to dismiss quotes the arresting officer's probable cause affidavit that while standing outside the defendant's vehicle the officer observed "the shiny silver butt of a gun sticking out of the console located underneath the radio." The State admitted this fact and did not file a traverse. Instead, the State informed the trial court that "[t]here's no traverse because there's no material facts in dispute."
Thus, the undisputed facts are that the gun was located in an open console underneath the radio and the officer observed the shiny silver butt of a gun sticking out of the console. There is no indication that the firearm was covered in any manner, no indication of any attempt on the defendant's part to hide the presence of the firearm, and no indication that the police officer had any difficulty recognizing the object as a firearm. We can discern no legal distinction between a firearm being located in an open console of a dashboard or on the front passenger seat of a vehicle. Thus, we agree with the trial court that the firearm was not concealed as a matter of law and conclude that trial court properly granted the motion to dismiss.
We hope that our clarification of Ensor will provide the courts with further guidance in construing these statutes. Nevertheless, almost twenty years after Ensor, *374 we find that the concerns of the dissent in that case bear repeating:
I think instead of trying to save the statute by stating our own views of what the law should provide we should firmly urge the legislature to define what acts and circumstances constitute carrying a concealed weapon.
What the public generally knows, courts can notice judicially. The rising increase of violent crimes in which pistols are used should demonstrate the urgent need for laws clearly stating who may carry weapons that are concealed, and under what circumstances, and what constitutes concealment.
403 So.2d at 355 (Boyd, J., dissenting).
The time may have come for the Legislature to reconsider whether to set forth the exact parameters for carrying a weapon in a vehicle in this state. This clarification would assist law enforcement agents who have legitimate concerns regarding protecting themselves and other citizens from those who carry easily accessible weapons in their motor vehicles without a license. It would also assist a law-abiding citizen to know how a weapon could be carried within a vehicle without running the risk of breaking the law. Lastly, it would aid the courts in construing the concealed weapons prohibition in a consistent manner.
Based on the foregoing, we quash Dorelus.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD and LEWIS, JJ., concur.
WELLS, J., concurs in result only with an opinion, in which QUINCE, J., concurs.
WELLS, J., concurring in result only.
I concur in the result in this case that the issue did not have to be presented to the jury. While I applaud the majority's effort in attempting to clarify this issue, I disagree specifically with the statement that variables including whether the window was open or closed or the time of day are never relevant. It is obvious to me that these are factors which could be relevant to the "ordinary sight of another person," and I would not eliminate them with a broad stroke.
I do not join the opinion because I am concerned that the majority's expansive analysis will create more legal issues in respect to what must be a fact intensive analysis. I would limit the opinion to a single statement that the issue of whether there is a violation of the concealment statute can be decided, as a matter of law, as to there being no violation when the facts as to placement of the weapons are not disputed and the placement of the weapons can reasonably be concluded not to come within the statutory definition of concealment.
QUINCE, J., concurs.
NOTES
[1] Although Dorelus alleges conflict with State v. Hardy, 610 So.2d 38 (Fla. 5th DCA 1992), and Gibson v. State, 576 So.2d 899 (Fla. 2d DCA 1991), we conclude that those cases are distinguishable. In both Hardy and Gibson, the weapons at issue were large knives, which may have contributed to the appellate courts' decisions to affirm the trial courts' findings that the weapons were not concealed as a matter of law. However, other cases are in apparent conflict on this issue. Compare Goodman v. State, 689 So.2d 428 (Fla. 1st DCA 1997), and State v. Puig, 551 So.2d 552 (Fla. 3d DCA 1989), with Cope v. State, 523 So.2d 1270 (Fla. 5th DCA 1988), and Mitchell v. State, 494 So.2d 498 (Fla. 2d DCA 1986).
[2] This statement comes from the sworn motion to dismiss quoting the arresting officer's probable cause affidavit for arrest. The officer did not testify below.
[3] Following the same reasoning, the Fourth District also reversed the order granting the codefendant's Florida Rule of Criminal Procedure 3.190(c)(4) motion. See State v. Presume, 710 So.2d 604 (Fla. 4th DCA 1998).
[4] The 1997 version of this statute is modified, but remains the same in relevant substance:

"A person who carries a concealed firearm on or about his or her person commits a felony of the third degree...." § 790.01(2), Fla. Stat. (1997). The definition of "concealed firearm" remains unchanged in the 1997 statutes. See § 790.001(2), Fla. Stat. (1997).
[5] It is a first-degree misdemeanor to carry a concealed weapon. See § 790.01(1), Fla. Stat. (1995).
[6] The same phrase is used in section 790.001(3)(a).
[7] We note that sections 316.2952-316.2956, Florida Statutes (1997), enacted in 1984, prohibit excessively tinted automobile windows. Section 316.2953 provides that the side windows of an automobile may only have a coating or tinting with a "solar reflectance on visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range." However, this statute's possible interface with the concealed weapons statute is not before us.