THOMPSON, C.J.,
concurs specially.
I agree that Blice’s arrest resulted from a valid Terry[1] stop. However, I write to address two issues raised by defense counsel during oral argument. Defense counsel argued that the officers’ initial contact with Blice was illegal since under no standard did the officers have a right to stop him. Further, defense counsel argued that since a portion of the gun could be seen, and the officers knew it to be a gun, they could not detain Blice because it was *449 apparent that the gun was not concealed. Therefore, it is argued, the fruits of the illegal stop should have been suppressed. See Jackson v. State, 579 So.2d 871 (Fla. 5th DCA 1991). I disagree with these arguments.
Was The Initial Stop Illegal?
According to the officers, when they arrived and observed Blice’s car, he was reclining in the front seat. After watching Blice’s chest for movement, one officer thought that he might be dead or injured. Not knowing whether he was ill, intoxicated, or merely asleep, the officers were duty-bound to investigate and to render assistance if needed. To do otherwise would be a dereliction of their duty. Until this point, there was a consensual police-citizen encounter with minimal police contact. During a police-citizen encounter, the police need no suspicion at all to engage a citizen. United States v. Edwards, 898 F.2d 1273 (7th Cir.1990). As long as the citizen is free to leave, no constitutional protections are implicated. Id.
Once the officers observed the gun, the level of the encounter increased because the police had a “reasonable suspicion” that Blice was committing the crime of carrying a concealed firearm. See Terry; § 901.151, Fla. Stat. (1991);[2] § 790.01, Fla. Stat. (2001); Popple v. State, 626 So.2d 185, 186 (Fla.1993).[3] Popple describes the various levels of police-citizen *450 encounters and the constitutional protection afforded a citizen during each level:
There are essentially three levels of police-citizen encounters. The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151 Fla. Stat. (1991). In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
While not involved in the instant case, the third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Sec. 901.15, Fla. Stat. (1991).
Id. at 186.
In the instant case, once the police observed the gun in the car and questioned Blice about it, the encounter elevated to the second level described in Popple. The police had the right to temporarily detain Blice, not based upon intuition or suspicion, but because the totality of the circumstances suggested that a crime might be afoot. Id.; Hunter v. State, 660 So.2d 244 (Fla.1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996); State v. Hunter, 615 So.2d 727 (Fla. 5th DCA 1993). The detention that followed the encounter was valid.
Was The Gun Concealed, If It Could be Seen?
Blice next argues that because the officers knew the object that they saw was a gun, it could not have been concealed and they therefore had no grounds to detain him. To support this position, Blice relies upon Dorelus v. State, 747 So.2d 368 (Fla.1999). Dorelus clarifies the Florida Supreme Court’s holding and definitions in Ensor v. State, 403 So.2d 349 (Fla.1981). In Dorelus, Justice Pariente clarified that whether a weapon is concealed is “ordinarily an issue for the trier of fact.” Id. at 371.
Further, Justice Pariente noted in Dorelus:
variables that can be taken into consideration by the trial court in evaluating whether the weapon has been carried in such a manner as to be hidden from ordinary sight include the location of the weapon within the vehicle, such as the floor board, the seat, a seat pocket, or an open console. The court should also consider whether, and to what extent, the weapon was covered by another object, such as a sheet or towel.
Id. at 371.
In the trial court’s order denying the motion to suppress, the trial court cited several factors which led to the determination that there were grounds to believe that Blice was in possession of a concealed weapon: the time and location Blice had parked his car; the testimony of the officers about the gun when they first saw it; *451 the nonsensical explanation Blice gave for being at the location; and the fact that the gun was partially covered by a jacket.
PALMER, J., concurs.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).

. Section 901.151, Florida Statutes (2001), provides in part:
(1) This section may be known and cited as the “Florida Stop and Frisk Law.”

(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person’s presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.

(3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, the person shall be released.
(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
(6) No evidence seized by a law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).
(emphasis added).

. Some criminal procedure concepts have become well-known to the general public through television and movies; Miranda warnings, Terry stops, probable cause, and search warrants immediately come to mind. Other concepts are not as prominent in the eye of the general public, but are well-known to judges and lawyers who specialize in criminal defense. The concepts enunciated in Popple are well-known among the bench and bar.