DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**ANDREW BENJAMIN,**
Appellee.

No. 4D14-2110

[March 16, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Bernard I. Bober, Judge; L.T. Case No. 12-007086 CF10A.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellant.

Carl H. Lida of Carl H. Lida, P.A., Plantation, for appellee.

CONNER, J.

Andrew Benjamin filed a rule 3.190(c)(4) motion to dismiss his charge of carrying a concealed firearm, which the trial court granted. The State appeals, arguing that because different inferences can be drawn from the undisputed evidence, the concealment issue cannot be determined as a matter of law. We agree.

*Factual Background and Trial Court Proceedings*

Benjamin was a passenger in a vehicle stopped by two officers for speeding and seat belt violations. First Officer approached the driver's side of the vehicle; Second Officer approached the passenger's side. As he approached the vehicle, First Officer saw an empty holster in the driver's lap. When questioned, the driver admitted there was a gun in the trunk. Both occupants were asked to step to the front of the vehicle, and the driver gave the officers permission to search. Second Officer stayed with Benjamin and the driver at the front of the vehicle while First Officer searched the trunk and the driver's side of the vehicle, finding no gun. First Officer then approached the front passenger's side where Benjamin

had been sitting. The passenger door was open, and he could see, in open view, the half-inch tip of the barrel of a handgun underneath the passenger seat. First Officer retrieved the handgun, and Benjamin was arrested and charged with carrying a concealed firearm. At the time of his arrest, Benjamin did not have a concealed firearm permit.

Benjamin filed a motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). At the evidentiary hearing on Benjamin's motion, the State presented evidence in support of its motion to strike and traverse Benjamin's motion to dismiss. Of note, Second Officer testified that at no point did he see a gun visible in the vehicle.

The trial court granted Benjamin's rule 3.190(c)(4) motion, whereupon the State gave notice of appeal.

*Appellate Analysis*

"Because a motion to dismiss pursuant to rule 3.190(c)(4) requires the lower court to make a pretrial determination of the law of the case when the facts are not in dispute, the standard of review on appeal is de novo." *State v. Hinkle*, 970 So. 2d 433, 434 (Fla. 4th DCA 2007) (citing *State v. Pasko*, 815 So. 2d 680, 681 (Fla. 2d DCA 2002)).

On appeal, the State argues that the trial court erred in granting dismissal because "the state established a prima facie case and was entitled to the most favorable construction of evidence with all inferences resolved against [Benjamin]."

Under Florida Rule of Criminal Procedure 3.190(c)(4), a defendant may file a pre-trial motion to dismiss arguing that "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." The facts on which the motion is based must be sworn to and should be alleged specifically. Fla. R. Crim. P. 3.190(c). Here, the State conceded that the facts sworn to by Benjamin were undisputed, but filed a traverse nonetheless, alleging there were additional material facts not sworn to by Benjamin. The State presented the additional facts at the hearing on the motion to dismiss.

At the motion to dismiss stage, "[t]he state need only establish a prima facie case and 'is entitled to the most favorable construction of evidence, and all inferences should be resolved against the defendant.'" *Hinkle*, 970 So. 2d at 434 (quoting *Pasko*, 815 So. 2d at 681). To establish a prima facie case, "the State must show only that a reasonable jury *could* find the defendant guilty of the charged crime under the most favorable

construction of the evidence." *State v. Yarn*, 63 So. 3d 82, 85 (Fla. 2d DCA 2011).

Section 790.01(2), Florida Statutes (2012), provides: "[A] person who carries a concealed firearm on or about his or her person commits a felony of the third degree." A "concealed firearm" is defined as "any firearm . . . which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person." § 790.001(2), Fla. Stat. (2012).

In *Ensor v. State*, 403 So. 2d 349 (Fla. 1981), our supreme court interpreted the definition of a "concealed firearm" in a case akin to the present case. There, police officers stopped a vehicle in which defendant was the passenger for a traffic violation. The vehicle's two occupants were asked to step to the rear of the vehicle. *Id.* at 351. While two officers questioned the two occupants, two other officers looked inside the vehicle with their flashlights. *Id.* Peering through the front windshield, one officer saw a portion of a white object protruding from under the passenger floormat, and from looking inside the opened passenger door, the officer determined the object was a gun. *Id.*

After analyzing the open view doctrine, the supreme court explained the test for determining whether an item is "concealed":

> The operative language of that section establishes a two-fold test. For a firearm to be concealed, it must be (1) on or about the person and (2) hidden from the ordinary sight of another person. The term "on or about the person" means physically on the person or readily accessible to him. This generally includes the interior of an automobile and the vehicle's glove compartment, whether or not locked. *The term "ordinary sight of another person" means the casual and ordinary observation of another in the normal associations of life. Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible.*

*Id.* at 354 (emphasis added). The court found that absolute invisibility is not a necessary element to a finding of concealment under the statute. *Id.* The court also explained that there are no "absolute standards" and that "a weapon's possible visibility from a point outside the vehicle *may not*, as a matter of law, preclude the weapon from being a concealed weapon under section 790.001." *Id.* (emphasis added).

3

Eighteen years after *Ensor*, our supreme court again interpreted the concealed firearm statute in the context of a vehicle. In *Dorelus v. State*, 747 So. 2d 368 (Fla. 1999), the court held the undisputed facts (1) that a gun was located in a vehicle in an open console underneath the radio and (2) that the officer making a traffic stop observed the shiny silver butt of the gun sticking out of the console, were sufficient for the trial court to conclude that the gun was not concealed. *Id.* at 373.

The court relied on, and clarified, *Ensor*'s interpretation and analysis of the "concealed firearm" statute. *Id.* at 370–71. The court clarified that the issue of concealment is *ordinarily*, but not always, one for the trier of fact and that the focus should be on the *manner* in which the firearm is carried. *Id.* at 371. The court stated that its decision in *State v. Teague*, 475 So. 2d 213, 214 (Fla. 1985), "recognized this focus by making clear that the crux of concealment is the location of the weapon in the vehicle." *Dorelus*, 747 So. 2d at 371. In *Teague*, the supreme court also emphasized that the term "concealed," as used in the statute, "must be construed in accordance with its usual and ordinary meaning." 475 So. 2d at 214.

In *Dorelus*, the supreme court announced variables that the trial court can consider in evaluating whether a firearm has been placed in a vehicle in such a *manner* as to be hidden from ordinary sight: (1) the location of the firearm within the vehicle; (2) whether and to what extent the firearm was covered by another object; (3) if the defendant utilized his or her body to conceal the firearm; and (4) the nature and type of the weapon involved. 747 So. 2d at 371–72. The court again reiterated that common sense should prevail when considering these variables. *Id.* at 372 (citing *Ensor*, 403 So. 2d at 354–55).

The critical question from *Ensor*—whether either officer could see the firearm by ordinary observation while standing beside the vehicle with the passenger seated in the passenger seat—was not directly asked during the hearing in this case. However, the State asked Second Officer, who was the first to approach the passenger's side, if he could see inside the vehicle. He answered in the affirmative, and stated that he could see the area around Benjamin, while he was seated in the vehicle, and he saw nothing obvious nor any firearm in open view.

Common sense would suggest that the firearm under the passenger seat was concealed from Second Officer, since he did not see it as he stood on the passenger's side speaking with the seated Benjamin. It was not until Benjamin was outside the vehicle being detained by Second Officer, that First Officer saw the firearm under the passenger seat. Consequently, from the testimony of the two officers on scene, there is a conflict as to

4

whether the tip of the firearm was clearly visible. This conflict supports the State's argument that whether the firearm was in the ordinary sight of another person, or was concealed, is a question for jury determination.

We also agree with the State that, arguably speaking, the firearm was covered by another object—the passenger seat. Although the trial court found there are no facts or testimony to suggest that Benjamin utilized his body to conceal the firearm, the lack of such evidence does not decide the matter. Since First Officer was able to see the firearm only from the passenger's side, with the door open and Benjamin out of the car, it seems that the firearm was visible only under a specific set of circumstances.

The main evidence that Benjamin attempted to conceal the firearm is (1) the location of the firearm under the passenger seat with just a half-inch tip of the firearm exposed, (2) the fact that neither officer saw the tip of the firearm while both the driver and Benjamin were inside the vehicle, and (3) First Officer did not see the tip of the firearm during his search of the vehicle until he approached the open door of the passenger's side. The fact that First Officer recognized immediately that the half-inch tip of an object was, in fact, a gun does not mean the State could not make a prima facie showing that the firearm was concealed.

Because the observation of the half-inch tip of the firearm from underneath the passenger seat did not occur until after the passenger door was open and the passenger was removed from the seat, the analysis under *Ensor* and *Dorelus* regarding a partially-visible firearm dictates that it is a jury question as to whether the firearm was within "the casual and ordinary observation of another in the normal associations of life." *Dorelus*, 747 So. 2d at 371 (quotation marks omitted) (quoting *Ensor*, 403 So. 2d at 354). We agree with the State that such facts could yield different inferences as to whether the firearm was concealed within the meaning of the statute, thus, precluding a rule 3.190(c)(4) dismissal of the charge.

*Reversed and remanded.*

GROSS and MAY, JJ., concur.

*            *            *

***Not final until disposition of timely filed motion for rehearing.***