**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11638

Non-Argument Calendar

_____

MELISSA ANTOINETTE BETTERSON,

*Plaintiff-Appellant,*

*versus*

TOWN OF CUTLER BAY,
  a municipality,
MIAMI DADE COUNTY,
STEPHANIE V DANIELS,
  Miami Dade County Director,
MAJOR LEONARD RICELLI,
OFFICER C. ROMERO-ARREDONDO, et al.,

*Defendants-Appellees,*

OFFICER C CASTILLO,

*Defendant.*

—————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-24525-JB

—————————————————

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Melissa Antoinette Betterson appeals pro se from the district court's order dismissing her 42 U.S.C. § 1983 complaint against the defendants for arresting her without probable cause and denying her medical treatment, in violation of her Fourth and Eighth Amendment rights and Florida law.  On appeal, Betterson argues that the district court: (1) erred in relying on the arrest affidavit attached to her complaint because she alleged that the arrest affidavit was false; (2) erred in dismissing Counts 1-5 of her complaint because there was not probable cause to arrest her; (3) erred in dismissing Counts 3-5 against the Town Manager (Rafael Casals), the Director of the County Police Department (Stephanie Daniels), and the Major and Commander of the Town (Leonard Ricelli) in their individual capacities because they had a duty to properly train the officers; (4)  erred in dismissing Count 7 against one of the arresting officers, Sergeant Romero, in her individual capacity because Florida waived sovereign immunity; (5) erred in dismissing Counts 3-5 and 7 against Casals, Ricelli, Daniels, and Romero in their official capacities because those claims were not duplicative of Counts 1-2; (6) erred in dismissing Counts 8, 10-13, and 15 because her arrest and detention were a

single incident that showed a municipal custom of violating constitutional rights; and (7) erred in dismissing Counts 10-12 and 15 against Daniels and Romero in their individual capacities because they were not entitled to qualified immunity.

## I.    DISCUSSION

*A. Reliance on the Arrest Affidavit*

We review de novo a district court's dismissal of a complaint for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019).

In general, documents attached to a complaint can be considered by a federal court in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). When a plaintiff attaches a police report to his complaint and alleges that it is false, "the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss." *Id.* However, "when exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill*, 941 F.3d at 514; *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277-78 (11th Cir. 2016) (noting that "[t]he classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself"). Thus, when a plaintiff alleges that an arrest affidavit is misleading or incorrect, the court "must . . . compare each relevant allegation in the complaint with its

counterpart in the arrest affidavit and decide if is specific enough to prevent that statement in the affidavit from being considered." *Gill*, 941 F.3d at 514-15 (citation modified).

In *Saunders*, the plaintiff sued police officers for excessive force during his arrest and attached to his complaint a copy of the police report.  766 F.3d at 1265-66.  The plaintiff detailed the excessive force allegedly used against him and alleged that the attached police report intentionally failed to include any mention of excessive force.  *Id.* at 1270-71.  We held that, based on the plaintiff's allegations that the report falsely described the circumstances of his arrest, we would not credit the report as true even though it was attached to the complaint.  *Id.*

Under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this [C]ourt sitting en banc."  *United States v. Dudley*, 5 F.4th 1249, 1265 (11th Cir. 2021) (citation modified).

Here, the district court did not err by considering the arrest affidavit.  Betterson attached the arrest affidavit to her complaint and relied on it when she described the facts surrounding her arrest.  *Saunders*, 766 F.3d at 1270.  Betterson made an insufficient allegation that the arrest affidavit was false because her allegation contested the charge for concealed carry, not the facts as stated in the affidavit, thus the court properly considered the affidavit.  *Gill*, 941 F.3d at 514.  Betterson's reliance on *Saunders* is misplaced because she did not allege in her complaint that the facts detailed

in the arrest affidavit were incorrect or false, but rather they did not support probable cause for her concealed carry arrest. Although at one point in her complaint she alleged that the affidavit was false because it stated that she had a concealed firearm, that allegation is contradicted by the affidavit itself, which included no such statement, and so the affidavit governs  *See Gill*, 941 F.3d at 514. Nor was the court required to ignore the arrest affidavit under the prior panel rule because *Gill* did not contradict *Saunders* or *Hoefling*, because it addressed an instance when a plaintiff failed to allege the falsity of an attached exhibit.  *Dudley*, 5 F.4th at 1265.  Though Betterson argues on appeal that she alleged the arrest affidavit was false with respect to the battery charge, her complaint did not allege that her boyfriend did not tell police she slapped him. Rather, by noting the differential in her size relative to her boyfriend's, she appeared to be alleging that she could not physically have slapped him, such that there was no probable cause for her arrest for battery.  Thus, like her argument about the concealed carry charge, Betterson did not allege that the affidavit was false, but that the facts in the affidavit did not support a battery charge.  Accordingly, the district court properly considered the arrest affidavit in ruling on the defendants' motion to dismiss.

## B.  Probable Cause to Arrest

In ruling on a motion to dismiss, "legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016)

(citation modified). Although a document filed pro se is to be liberally construed, a court's duty to liberally construe a pro se pleading "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation modified).

We review de novo "both a probable cause determination . . . and the district court's determination of state law." *Garcia v. Casey*, 75 F.4th 1176, 1184 (11th Cir. 2023) (citation modified). We may affirm the district court on any legal basis, "regardless of the grounds addressed and relied upon by the district court." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

Probable cause bars a false arrest claim under Florida law. *Davis v. City of Apopka*, 78 F.4th 1326, 1333 (11th Cir. 2023). Probable cause exists "where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." *Garcia*, 75 F.4th at 1186. Under the "any crime" rule, false arrest claims are barred "so long as probable cause existed to arrest the suspect for *some* crime, even

if it was not the crime the officer thought or said had occurred." *Id.* at 1187.

We have held that an officer does not need evidence of every element of a crime to have probable cause. *Davis*, 78 F.4th at 1335. Moreover, an officer "is not required to resolve every inconsistency found in the evidence" at the scene of arrest. *Id.* (citation modified). Likewise, an officer need not forgo arrest based on "a suspect's innocent explanation for suspicious facts" if police could reasonably conclude from the totality of the circumstances that a crime was committed. *Id.* at 1336 (citation modified).

Under Florida law, a firearm is concealed if it is "carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person." Fla. Stat. § 790.001(3). To determine whether a firearm is concealed, Florida courts consider all the circumstances, and "absolute invisibility to other persons is not indispensable to concealment." *State v. Yarn*, 63 So. 3d 82, 85 (Fla. Dist. Ct. App. 2011); *see also State v. Hankerson*, 430 So.2d 517, 518 (Fla. Dist. Ct. App. 1983) (holding that a defendant could be charged with concealed carry when he leaned over a gun to hide it, though the gun was visible to the officer); *Jean-Marie v. State*, 947 So.2d 484, 488-89 (Fla. Dist. Ct. App. 2006) (noting that there was probable cause to arrest a defendant for concealed carry where he ran from an officer after a traffic stop and, during the chase, he reached into his waistband, pulled out a gun, and threw it away). However, "although the observations of the police officer will not necessarily be dispositive, a statement by the observing officer that

he or she was able to 'immediately recognize' the questioned object as a weapon may conclusively demonstrate that the weapon was not concealed as a matter of law because it was not hidden from ordinary observation." *Dorelus v. State*, 747 So.2d 368, 371, 373 (Fla. 1999) (holding that a firearm was not concealed because it was not covered, the defendant did not try to hide it, and the officer easily recognized it).

A person may carry a concealed firearm if she is licensed or meets the criteria for obtaining a license. Fla. Stat. § 790.01. These criteria include prohibitions for convicted felons and individuals who have committed a violent misdemeanor. Fla. Stat. § 790.06(2)(a)-(f), (i)-(n), (3), and (10). A person has the right, without a duty to retreat, to threaten deadly force if she believes that it is necessary to prevent imminent death or great bodily harm to herself or to prevent the imminent commission of a forcible felony. Fla. Stat. § 776.012(2). Florida law makes it unlawful for a person to discharge a firearm in a public place or near a dwelling. Fla. Stat. § 790.15(1).

A person commits battery when she "actually and intentionally touches or strikes another person against the will of the other" or "intentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a).

Even if there was not probable cause for the charged offenses, there was probable cause to arrest Betterson for "some crime." *See Garcia*, 75 F.4th at 1186. The affidavit shows that the police responded to a report of shots fired, saw Betterson in the

front yard holding the gun, and saw her drop the gun, which gave them a reasonable belief that there was a substantial chance of criminal activity, specifically, that she fired the gun near a dwelling, in violation of Fla. Stat. § 790.15(1).  *Garcia*, 75 F.4th at 1186. Though Betterson alleged that she told the police she responded to her boyfriend hitting her and thus arguably acted in self-defense, the police were not required to avoid arresting her because the other circumstances suggested she was engaged in criminal activity.  *Davis*, 78 F.4th at 1336.

Accordingly, there existed probable cause to arrest Betterson, barring her state law false arrest claims.  *See Davis*, 78 F.4th at 1333.

## C.  Defendants Not Present at Arrest

Under Florida law, a false arrest claim must allege "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances."  *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App. 2010) (citation modified).  "To be liable for false imprisonment, a person must personally and actively participate, directly or indirectly by procurement, in the unlawful restraint of another person against their will."  *Harris v. Kearney*, 786 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2001).

Here, the district court did not err in dismissing Counts 3-5 of Betterson's complaint.  Betterson did not allege that Casals,

Ricelli, or Daniels were present at the arrest, or that they indirectly caused her arrest. *Harris*, 786 So. 2d at 1225. Accordingly, the district court properly dismissed Counts 3-5 on the grounds that they did not state a claim against Casals, Ricelli, and Daniels.

### D. Sovereign Immunity from False Arrest Claim

Under Florida law, "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." Fla. Stat. § 768.28(1). State officers, employees, and agents acting within the scope of their employment are shielded from personal liability unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a). "The first two exceptions, in bad faith and with malicious purpose, are synonymous with each other under Florida law." *Coleman v. Hillsborough Cty.*, 41 F.4th 1319, 1325 (11th Cir. 2019) (citation modified). "The actual malice and malicious purpose exceptions apply when the conduct was committed with ill will, hatred, spite, or an evil intent." *Id.* (citation modified). The third exception requires conduct that is worse than gross negligence. *Id.*

Here, the district court did not err in dismissing Count 7 against Romero because she was entitled to sovereign immunity. As an initial matter, the district court did not construe the allegations against Betterson by finding against her, as it was not required to take her legal conclusions as true. *Dusek*, 832 F.3d at

1246.  Though Betterson argues that Florida law waives sovereign immunity, it expressly provides limitations on this waiver that protects state employees.  Fla. Stat. § 768.28(1), (9)(a).  Betterson's allegations that Romero participated in her arrest and failed to arrest her boyfriend did not show that Romero acted with an evil intent or more than gross negligence because there was probable cause for Betterson's arrest.  Even if there was not probable cause, the officers responded to a notification of shots fired and Betterson had a gun, thus her arrest was based on the officers' belief, even if erroneous, that Betterson was engaged in criminal activity, not an evil intent or negligence.  § 768.28(9)(a).  Moreover, Betterson's arguments about absolute immunity and the Federal Tort Claims Act are inapposite because the district court did not rely on absolute immunity and Count 7 is not a claim against the federal government.  28 U.S.C. § 2674.  Accordingly, the district court properly found that Romero was entitled to sovereign immunity.

### E.  Official Capacity Claims

Under Florida law, a suit against a municipal official in her official capacity is equivalent to a suit against the municipality. *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. Dist. Ct. App. 1997).

Here, the district court did not err in finding Betterson's false arrest claims against Casals, Ricelli, Daniels, and Romero in their official capacities in Counts 3-5 and 7 were duplicative of her claims against the Town and County in Counts 1-2 because Casals and

Ricelli are Town employees and Daniels and Romero are County employees.  Thus, the court did not err in dismissing those counts.

## F. Municipal Custom or Policy Requirement

Section 1983 provides a cause of action for private citizens against persons acting under color of state law for violating their constitutional rights and other federal laws.  42 U.S.C. § 1983.

A suit against a public official in his official capacity is treated as a suit against the government entity he represents.  *Salvato v. Milev*, 790 F.3d 1286, 1295 (11th Cir. 2015).  "A municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978).  Rather, a municipality can only be held liable for its official policies.  *Id.*  "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights."  *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty, Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022).  We have recognized that, under Florida law, police chiefs have final policymaking authority in their respective municipalities for law enforcement matters.  *See Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005).

In "limited circumstances," a municipality may be held liable for failing to train or supervise its employees.  *City of Canton v.*

*Harris*, 489 U.S. 378, 387 (1989).  Inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference" to the plaintiff's rights.  *Id.* at 388.  Deliberate indifference in this context means that the municipality knew of a need to train in a particular area and made a deliberate choice not to act.  *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1326 (11th Cir. 2016).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation modified)

We have noted that, in *Canton*, the Supreme Court "in dictum left open the possibility that a need to train could be 'so obvious,' resulting in a City's being liable without a pattern of prior constitutional violations."  *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998).  However, using a "single incident" as the basis for liability is available in only a "narrow range of circumstances."  *Bd. of Cnty. Comr's of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997).  For instance, the Supreme Court hypothesized that a city could be liable without a prior pattern of constitutional violations if it armed its police force with firearms and deployed the police—without any training—into the public.  *Canton*, 489 U.S. at 390 n.10.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a § 1983 claim, while an arrest

made with probable cause constitutes an absolute bar to a § 1983 action for false arrest. *Brown*, 608 F.3d at 734. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment imposes duties on prison officials who "must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation modified). To establish a claim of deliberate indifference, a plaintiff must first, as a threshold matter, show that he suffered an "objectively, sufficiently serious" deprivation. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citation modified). "Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims." *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994). Generalized allegations of pain or "mere discomfort," without more, cannot be considered. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). Second, the plaintiff must show that the defendant "acted with subjective recklessness as used in the criminal law," showing "that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade*, 106 F.4th at 1262 (citation modified).

If a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision. *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022).

Here, the district court did not err in dismissing Counts 8, 10-13, and 15. As an initial matter, to the extent Betterson alleged a conditions-of-confinement claim in Count 12, she waived it by disclaiming the argument in her response to the defendant's motion to dismiss. *Campbell*, 26 F.4th at 872. Counts 10-12 and 15 against Daniels and Romero in their official capacities are equivalent to a suit against the County and, thus, Betterson must allege a custom or policy to establish liability. *Salvato*, 790 F.3d at 1295; *Chabad*, 48 F.4th at 1229. Betterson did not allege municipal liability for her Fourth Amendment claims against the Town in Count 8 and against Daniels and Romero in Counts 10-11 because, as explained above, Betterson did not allege a violation of her Fourth Amendment rights because there was probable cause for her arrest. *Brown*, 608 F.3d at 734. Even if there were not probable cause, Betterson did not allege that there was a Town policy or that Daniels's or Romero's actions reflected a County policy, nor did she allege that her Fourth Amendment claim fell into the narrow circumstances that show an obvious constitutional violation. *Brown*, 520 U.S. at 409; *Canton*, 489 U.S. at 390 n.10.

Betterson's allegations in her Eighth Amendment claims against the Town in Count 13 and against Daniels and Romero in Counts 12 and 15 did not show any municipal policy or widespread practice that led to her not receiving treatment for her alleged head

injuries. *Chabad*, 48 F.4th at 1229. Though Betterson argues that Romero acted as the final policymaker by approving her arrest and detainment and ignoring her head injuries, Betterson's conclusory allegation that Romero was Castillo's supervisor did not demonstrate that Romero had final policymaking authority, and even if she did, Betterson's allegations did not demonstrate that Romero's decisions reflected County policy. *Cooper*, 403 F.3d at 1222; *Chabad*, 48 F.4th at 1229. Though Betterson also argues that a single incident could qualify as a violation for non-policymaking employees, Betterson did not allege that her Eighth Amendment claim fell into the narrow circumstances that show an obvious constitutional violation. *Brown*, 520 U.S. at 409; *Canton*, 489 U.S. at 390 n.10. Accordingly, the district court properly dismissed Counts 8, 10-13, and 15 for failure to allege a municipal custom or policy.

### G. *Qualified Immunity*

We review de novo dismissal for failure to state a claim based on qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery. *Cottone*, 326 F.3d at 1357. Once the affirmative defense of qualified immunity has been advanced, the defendant is entitled to dismissal unless the plaintiff alleged a violation of clearly established law. *Id.* Qualified immunity protects government officials performing discretionary functions from suit in their

individual capacities unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* To receive qualified immunity, the official must show that he was acting within his discretionary authority. *Id.* Once that showing is made, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* at 1358.

An officer is entitled to qualified immunity in his conduct in making an arrest where, based on the totality of the circumstances, the officer had arguable probable cause to effectuate the arrest. *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998). Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed. *Id.* Arguable probable cause is a lower standard than actual probable cause, and only requires that under all of the facts and circumstances, an officer reasonably could, not necessarily would, have believed that probable cause was present. *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016). When considering arguable probable cause, an arrest may be for a different crime from the one for which probable cause actually exists. *Wilkerson v. Seymour*, 736 F.3d 974, 978-79 (11th Cir. 2013). In other words, "arguable probable cause to arrest for some offense must exist in order for officers to assert qualified immunity from suit." *Id.* at 979 (citation modified).

Issues not briefed by a pro se litigant are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

Here, as an initial matter, Betterson abandoned the issue that Daniels's absence at the arrest entitled her to qualified immunity on the Fourth Amendment claims because Betterson failed to brief the issue on appeal. *Sampson*, 518 F.3d at 874. Even if the issue was not abandoned, Daniels and Romero are entitled to qualified immunity on Counts 10 and 11 because, as explained above, the officers had probable cause to arrest Betterson for discharging a firearm near a dwelling, and even if there was not probable cause, there was arguable probable cause because another officer may conclude, after responding to a notification of gunshots and observing Betterson trying to hide the gun, that she fired the gun. *Thornton*, 132 F.3d at 1399; *Cottone*, 326 F.3d at 1357. Daniels and Romero are also entitled to qualified immunity on the Eighth Amendment claims in Counts 12 and 15 because Betterson did not allege that they violated her constitutional rights. Betterson did not allege that her head injury was severe, obviously serious, or anything more than "mere discomfort." *Wade*, 106 F.4th at 1262; *Harris*, 21 F.3d at 394; *Mann*, 588 F.3d at 1307. Nor did Betterson allege that Daniels knew of her head injury. *Wade*, 106 F.4th at 1262. To the extent that Betterson alleged a conditions-of-confinement claim against Daniels in Count 12, she did not allege that there was an unreasonable risk of her being housed in the psych ward in the jail would cause her serious damage. *Chandler*, 379 F.3d at 1289. Thus, the district court did not err in dismissing Counts 10-12 and 15 of Betterson's complaint.

25-11638              Opinion of the Court                    19

For the foregoing reasons, the decision of the district court is

**AFFIRMED.**